BEN R. MEYER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RAY C. MEYER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MILTON E. GETZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTELLE C. GETZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 72248, 72249, 72250, 72251, 75610, 75611, 75612, 75613, 79030, 79031, 79032, 79033, 84684, 84685, 84686, 84687, 93046, 93047, 93048, 93064.

Promulgated September 30, 1941.

*Thomas R. Dempsey, Esq.,* and *Wellman P. Thayer, Esq.,* for the petitioners.

*Samuel Taylor, Esq.,* for the respondent.

234

236

OPINION.

Tyson: The respondent, on brief, concedes that there are no deficiences of any of the petitioners for the year 1934. He also concedes,

on brief, that the amounts of withdrawals by petitioners from Limited in each of the years 1932, 1933, and 1934, determined by him to constitute dividends to petitioners in those respective years, should be reduced by the amounts which were paid by petitioners in each of such years and designated on the books of Limited as "interest" in the accounts of "Ben R. & Ray C. Meyer" and "Milton E. & Estelle C. Getz."

The only issues remaining for decision are (1) whether the net withdrawals of petitioners from Limited during each of the taxable years, except 1934 (i. e., their total withdrawals less the total amounts, including "interest", paid by them to Limited), constituted loans, as contended by the petitioners, or distributions, taxable as dividends, as contended by the respondent; and (2) whether, if held to be loans, "interest" paid by petitioners in the years 1932, 1933, and 1934, is deductible from their respective gross incomes in those years.

The first issue presents two questions: First, were petitioners "shareholders" of Limited during the taxable years, within the purview of section 115 (a) of the Revenue Acts of 1928, 1932, and 1934,[1] notwithstanding they were not the record owners of Limited's stock; and, second, if they were such shareholders, did petitioners' net withdrawals from Limited during the taxable years constitute dividends, that is, "distributions" made by Limited "out of its earnings or profits", within the purview of that section.

In seeking the answer to the first question, the principle, that substance and not form should control in the application of Federal income tax laws, is particularly applicable to the facts as shown in our findings in the instant proceedings. *United States* v. *Phellis*, 257 U. S. 156; *Gregory* v. *Helvering*, 293 U. S. 465; *Griffiths* v. *Helvering*, 308 U. S. 355; *Higgins* v. *Smith*, 308 U. S. 473; *Helvering* v. *Gordon*, 87 Fed. (2d) 663; and *Kaspare Cohn Co. Ltd.*, 35 B. T. A. 646.

Looking through the form of the corporate organization of Cohn, Inc., and its record ownership of the stock of Limited, we find that, in substance, the petitioners were in reality the shareholders of Limited. Through ownership of all of the stock of Cohn, Inc., a closely held family corporation, which, in turn, owned all of the stock of Limited, the petitioners were the beneficial and real owners of the assets of Cohn, Inc., including Limited's stock. During the taxable years petitioners Ben R. Meyer and Milton E. Getz were alternately president and vice president of Limited and at least three of petitioners, viz, those two and Estelle C. Getz, were among the five direc-

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

tors of Cohn, Inc., and the sole directors of Limited. Through the holding of such offices, petitioners were in fact and in actual practice in absolute control of Limited and the latter's assets; and through the exercise of that control, petitioners, over a period of years including the taxable years in question, have withdrawn Limited's earnings or profits at their own discretion, for their own personal uses, and in a manner which best suited their own purposes.

In answer to the first question, as stated above, we hold that through their control of and their beneficial and real ownership of the stock of Limited, petitioners were the "shareholders" of that corporation, within the purview of section 115 (a), *supra*.

Petitioners cite *Howard M. Taylor*, 14 B. T. A. 863, as authority for their contention that they were not the shareholders of Limited. The facts in that case differed materially from the facts presented here. The fact in that case, that the taxpayer was not the record owner of the stock of the corporation from which his withdrawals were made, was not the basis upon which the decision rested, but it rested upon the application to the facts therein of principles which would have applied had the taxpayer been the record owner of such stock. In this connection see *Helvering* v. *Gordon, supra*.

We now turn to consideration of the second question, as above stated. The principle that substance and not form controls is also applicable here. Under the set-up evidenced by our findings the answer to this question must turn on the effect of what was actually done rather than on the form of the transaction, *Gregory* v. *Helvering, supra;* cf. *Helvering* v. *Gordon, supra*, for "fictional corporate camouflage cannot be made the device to escape taxation." *North Jersey Title Insurance Co.* v. *Commissioner*, 84 Fed. (2d) 898. Taxpayers will not be permitted to shift from themselves the tax burdens imposed upon income or taxable benefits derived by them merely because of the form employed in carrying out a transaction; but, instead, the form will be looked through to discover the reality of the transaction. *Gregory* v. *Helvering, supra; Higgins* v. *Smith, supra; Griffiths* v. *Helvering, supra; Helvering* v. *Gordon, supra;* and *Kaspare Cohn Co. Ltd., supra*.

Through the exercise of their control of Cohn, Inc., and Limited we find petitioners, for their personal uses including living expenses, withdrawing Limited's accumulated earnings or profits on open accounts until, according to their respective balance sheets, at the end of 1935 the Meyers owed Limited a total of $2,840,724.26 and the Getzes owed Limited a total of $1,961,155.45, notwithstanding certain credits made to those accounts from time to time, which credits were evidently designed to reduce the amounts of the withdrawals and give the color of loans to the form of the transactions. By making withdrawals in such a manner the necessity of going through the formalities of having

Limited declare dividends to Cohn, Inc., and thereafter having Cohn, Inc., declare dividends to petitioners, in order for petitioners to receive the benefit of their withdrawals, was obviated. Through their control of these two corporations petitioners took a direct route in securing for their personal uses large portions of Limited's accumulated earnings or profits without the formalities just mentioned.

From the facts before us we are convinced that petitioners used their control of Limited to withdraw from Limited whatever funds they desired at such times and in such amounts as they chose, very much in the manner of a sole proprietor appropriating the proceeds of the business in which he is engaged to supply his personal needs and recording the transactions as charges to his personal account without any specific requirement for repayment, except if, as, and when he chose. This was the position occupied at all times by petitioners with regard to the accounts carried on the books of Limited as "Ben R. & Ray C. Meyer" and "Milton E. & Estelle C. Getz", since those accounts would never become due and payable except as and when the petitioners chose to render them so through the affirmative action of Limited, which they controlled.

At no time subsequent to 1928 did Limited make any formal distribution by way of dividends, although during each of the taxable years Limited had accumulated earnings or profits available for distribution as taxable dividends in amounts greatly in excess of the net withdrawals by petitioners in such years. It therefore appears that in following their usual practice petitioners withdrew during the taxable years earnings or profits from Limited which were available for distribution as dividends and had such withdrawals treated as loans on the books of Limited. Such a practice, in lieu of paying dividends, had many advantages: First, it did not affect the apparent book value of Limited's capital assets; second, it was a convenient method of distributing the earnings and profits of Limited without the formal declaration of dividends; and last, but not least, petitioners would be relieved of paying income tax on the withdrawals as dividends distributed if the withdrawals were held to be loans.

During each of the taxable years petitioners' withdrawals were used for their personal and living expenses. The Meyers were insolvent and could not have repaid their withdrawals; and the Getzes could not have repaid their withdrawals without selling most, if not all, of their assets, including their home and household furniture.

The fact that the withdrawals of petitioners were treated on the books of Limited and also on the books of petitioners as "loans" to petitioners is not controlling, for book entries may not be used to conceal realities as a means of relieving a taxpayer from liability for income taxes. *Chattanooga Savings Bank* v. *Brewer*, 9 Fed. (2d) 982;

affd., 17 Fed. (2d) 79; *Christopher* v. *Burnet*, 55 Fed. (2d) 527, affirming *L. J. Christopher*, 13 B. T. A. 729; *A. W. Mellon*, 36 B. T. A. 977, 1025, 1060; *Roy J. Kinnear*, 36 B. T. A. 153; *M. Jackson Crispin*, 32 B. T. A. 151; *C. W. Murchison*, 32 B. T. A. 32; *George P. Marshall*, 32 B. T. A. 956; *S. Schulein Co.*, 20 B. T. A. 264; *Daniel Hunt, Sr.*, 6 B. T. A. 558; and *Anketell Lumber & Coal Co.* v. *United States*, 1 Fed. Supp. 724. The fact that the payments, including payments designated as "interest", made to Limited by petitioners were credited on their respective accounts on Limited's books is not persuasive evidence that the withdrawals constituted debts of the petitioners. In all of the taxable years, except 1934, the withdrawals by each petitioner exceeded the amounts paid by such petitioner to Limited and the net result in each of those years was that the debit balance of the account of each petitioner was not reduced, but the total net withdrawals steadily increased from year to year. *C. W. Murchison, supra; A. W. Mellon, supra.*

We do not regard the giving of petitioners' demand notes dated August 1, 1934, December 31, 1934, and January 2, 1936, to Limited, in face amounts equal to the balance shown in their accounts on certain dates, of weighty significance as indicating that withdrawals of petitioners constituted debts; since the collection of those demand notes, as well as the making of same, was under the absolute control of petitioners througn their control of Limited and the notes could, at their will, never become actually due and payable. Furthermore, the record shows that such notes were not worth their face value and neither of the two petitioners who testified, Meyer and Getz, could give any satisfactory reason why petitioners waited until August 1, 1934, to give the first four of such notes; but it is to be noted that those four notes were executed subsequent to the time petitioners had been apprised that deficiencies had been determined against them for the years 1930 and 1931.

Petitioners contend that the execution by Meyer and Getz of the deed of trust by which they conveyed practically all their properties to the trust to guarantee certain indebtednesses of Limited is strong evidence that the withdrawals here involved were loans. We are of the opinion that this contention is unsound. The execution of the trust deed seems to bear no relation to the withdrawals in question. By executing the trust deed, Meyer and Getz simply guaranteed certain of the debts of Limited, for a portion of which (but for what portion is not shown) they were already liable on guarantees theretofore made by them at a time or times not shown by the record.

The testimony herein of Ben R. Meyer and Milton E. Getz that at the time the withdrawals were made they considered them as loans and intended to repay them with interest, taken in the light of the facts and circumstances set out in our findings of fact, is not persua-

sive as evidence going to establish that the withdrawals constituted loans rather than distributions of Limited's accumulated earnings or profits. In determining whether the withdrawals in question constituted loans or dividends, "one must look not alone to book entries * * * or to isolated expressions of witnesses or parties, but one must endeavor to visualize the entire situation as it existed." *Chattanooga Savings Bank* v. *Brewer, supra.*

The fact that the withdrawals from Limited by petitioners were not in proportion to their stock holdings in Cohn, Inc., is not determinative of whether such withdrawals constitute loans or dividends. It is well settled that earnings may be distributed to stockholders without regard to the proportions in which the shares of stock are held; especially where, as here, the record does not disclose that any of the stockholders complained of such distributions, but, on the contrary, shows that they at least tacitly agreed thereto. *Lincoln National Bank* v. *Burnet*, 63 Fed. (2d) 131, affirming *Lincoln National Bank, Executor*, 23 B. T. A. 1304; *Cleveland Shopping News Co.* v. *Routzahn*, 89 Fed. (2d) 902; *Speier* v. *United States*, 9 Fed. Supp. 1020; *Peoples Gin Co.*, 41 B. T. A. 343; affd., 118 Fed. (2d) 72; *Roy J. Kinnear, supra; C. W. Murchison, supra;* and *Henry F. Michell Co.*, 16 B. T. A. 1297.

We have found as a fact that petitioners' *net* withdrawals from Limited during the taxable years in question were in the following amounts:

| Year | Ben R. & Ray C. Meyer | Milton E. & Estelle C. Getz | Year | Ben R. & Ray C. Meyer | Milton E. & Estelle C. Getz |
|---|---|---|---|---|---|
| 1930 | $324,009.27 | $191,594.64 | 1933 | none | $1,109.50 |
| 1931 | 223,008.21 | 121,258.20 | 1934 | none | none |
| 1932 | 24,143.75 | 29,709.94 | 1935 | $44,220.04 | 38,212.17 |

In the light of all the facts and circumstances shown in our findings, we conclude in answer to the second question, as set out above, that the *net* withdrawals by petitioners were distributions to them of the earnings or profits of Limited accumulated since February 28, 1913, and not loans; and we therefore hold that the net withdrawals, in the amounts and for the taxable years as set out in the immediately preceding paragraph, are taxable to them as dividends. *Chattanooga Savings Bank* v. *Brewer, supra; Christopher* v. *Burnet, supra; George P. Marshall, supra; M. Jackson Crispin, supra; C. W. Murchison, supra; Daniel Hunt, Sr., supra; Garvan, Inc.* v. *Eaton*, 20 Fed. (2d) 422; and *Anketell Lumber & Coal Co.* v. *United States, supra.* Cf. *Helvering* v. *Gordon, supra; Roy J. Kinnear, supra; A. W. Mellon, supra; Henry F. Michell Co., supra.*

Counsel for petitioners argue, on behalf of Milton E. and Estelle C. Getz, that the amount of $150,000 paid to Limited in 1933 and credited

by Limited on an account standing in the name of "Milton E. Getz a/c Mtg. Maria de Francis" should be considered as a credit to the account of "Milton E. & Estelle C. Getz." Since the parties themselves, at the time, treated this transaction as something separate and distinct from the withdrawals here in question, the testimony of Milton E. Getz that the account was set up in error is not persuasive. We hold that no part of this amount should be considered as a credit to the account of "Milton E. & Estelle C. Getz" for the year 1933 in determining their net withdrawals for that year. For the same reasons we make the same holding with regard to the following: The amounts of $6,600 and $4,037.05 credited on the books of Limited during 1935 to the "Ben R. Meyer Special A/c, A/c Trust Agreement 1028", and the amount of $6,458.90 credited on the books of Limited during 1935 to the account "Milton E. Getz Special A/c, A/c Trust Agreement 1028."

We have held that through ownership of the stock of Cohn, Inc., the petitioners were the shareholders of Limited and that as such shareholders they received distributions from Limited's earnings or profits within the purview of section 115 (a), *supra*. Since the stock of Cohn, Inc., owned by Ray C. Meyer and Estelle C. Getz in the amount of 288 shares each, was their separate property, it follows that their corresponding separate shareholding interests in Limited were also their separate property and the income derived therefrom by them as dividends is taxable to them as their separate income, respectively. Also, since the stock of Cohn, Inc., owned by Ben R. Meyer and his wife and by Milton E. Getz and his wife, respectively, was community property, it follows that their corresponding shareholding interests in Limited were community property and the income derived from their respective shares as dividends is taxable one-half to each husband and one-half to his wife.

The record discloses that the withdrawals charged to the account of "Ben R. & Ray C. Meyer" were made by Ben R. Meyer and his wife in equal amounts and that the withdrawals charged to the account of "Milton E. & Estelle C. Getz" were made by Milton E. Getz and his wife each in equal amounts. It is immaterial that the withdrawals were not in proportion to the husband's and wife's respective shareholding interests in Limited, since as hereinbefore stated, it is well settled that earnings of a corporation may be distributed to stockholders without regard to the proportions in which the shares of stock are held.

We hold that the net withdrawals of each petitioner constituted the amount of dividends received by each and, further, that one-half of the net withdrawals charged to the account of "Ben R. & Ray C. Meyer" during each of the years in question is taxable to Ray C. Meyer as her separate income and the other half thereof is taxable as the community income of Ben R. Meyer and his wife. The same is true

as to the net withdrawals charged to the account of "Milton E. and Estelle C. Getz." Effect to the foregoing divisions of the income in question will be given upon the recomputation under Rule 50.

In view of decision that the withdrawals in question did not constitute loans, it follows that petitioners are not entitled to the deductions from gross income claimed as interest paid on loans.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

MURDOCK, BLACK, LEECH, TURNER, and HILL concur only in the result.