*Decision will be entered under Rule 50.*

ELLIOTT J. ROSCHUNI AND JUNE GILBERT ROSCHUNI, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58161. Filed March 31, 1958.

*Joseph Hartman, Esq.,* and *Llewellyn A. Luce, Esq.,* for the petitioners.

*W. Preston White, Jr., Esq.,* for the respondent.

1194

1200

OPINION.

KERN, *Judge:* The principal issue for our decision is whether certain amounts received by the petitioners from Hotels, Inc., during

the taxable years ended December 31, 1947 to 1951, inclusive, constituted distributions equivalent to the payment of dividends within the meaning of section 115 (a), I. R. C. 1939, as respondent has determined, or, as petitioners contend, were loans to petitioners from the corporation. The respondent's argument as to this question is adequately summarized in his brief as follows:

The respondent contends that the withdrawals from the hotel corporations by petitioner and her husband were distributions of earnings or profits of the entire chain of Gilbert hotel corporations and should be taxed as dividends for the following reasons: (1) the corporations were closely held and controlled; (2) no note, no interest, and no security were given to the hotel corporations by petitioners; (3) there was no definite time specified for repayment of the amounts withdrawn; (4) the withdrawals were substantial and for the petitioners' personal expenses; (5) there was no apparent ceiling on the amount that could be withdrawn by the petitioners; (6) the withdrawals were not to meet an unusual, nonrecurring emergency; (7) the constant practice of withdrawing corporate earnings on open account with only negligible repayments over a long period of years indicates an established method of dividend distribution; (8) the hotel corporations had a poor previous dividend record; (9) there was no effort to enforce collection on the part of the hotel corporations; (10) there was no plan or tangible means for repayment of the withdrawals by petitioners; (11) there were no large credits to petitioner's account until after she had been contacted by respondent's examining officer; (12) the hotel corporations had large surpluses; (13) the petitioner, who made most of the withdrawals, failed to testify, and (14) logic, as well as the decided cases, support[s] the respondent's determination.

The petitioners argue that the respondent's determination was erroneous and that the withdrawals constituted bona fide loans made by the corporation on open account to June, as it had the right to do, and were recognized as such by both the corporation and the petitioners in that the petitioners intended to repay these advances and did make substantial repayments. Petitioners also argue that the distributions could not be dividends because June was only a minority stockholder in Hotels, Inc., and because the distributions were greatly in excess of that corporation's earnings and profits. Another issue as to whether the assessments of the additional taxes for the taxable years 1947 and 1948 are barred by the statute of limitations will depend on whether and to the extent we sustain the respondent's determination of the deficiencies as to those years. If it develops that there has been a 25 per cent omission of gross income for each of those taxable years, the assessment would not be barred by reason of the provisions of sections 275 (c) and 276 (b) of the Internal Revenue Code of 1939. An additional issue involving the amount of the allowable deduction for medical expenses in the taxable year ended December 31, 1951, will also be dependent on our holding on the principal issue.

Whether withdrawals from a corporation represent loans or taxable distributions depends on all the facts and circumstances surrounding

the transactions between the stockholders and the corporation. *Harry E. Wiese*, 35 B. T. A. 701 (1937), affd. 93 F. 2d 921 (C. A. 8, 1938), certiorari denied 304 U. S. 562 (1938), rehearing denied 304 U. S. 589 (1938); *W. T. Wilson*, 10 T. C. 251 (1948). When the withdrawers are in substantial control of the corporation, such control invites a special scrutiny of the situation. *W. T. Wilson, supra; Ben R. Meyer*, 45 B. T. A. 228 (1941).

In our opinion, the evidence indicates that the withdrawals by June in the instant case constituted distributions of corporate earnings and profits equivalent to dividends within the meaning of the statute. Briefly, the record portrays the following situation:

Hotels, Inc., was controlled by June, for, although she only owned outright a small percentage of the common stock of Hotels, Inc. (10 shares), she controlled practically all of the common stock of that corporation by virtue of her position as sole heir and sole administratrix of her father's estate which held 524 shares of the 544 shares outstanding. As to the question of whether June's stock interest in Hotels, Inc., was sufficient to justify the treatment of the withdrawals as dividends, the case of *Ben R. Meyer, supra*, is pertinent. Officially, she was the president, treasurer, and a member of the board of directors of each of the corporations. Her husband became the vice president of these corporations in January 1948. During the taxable years the petitioner June maintained an account with, and made substantial withdrawals from, Hotels, Inc., in order to take care of whatever personal expenses she had incurred. She also withdrew funds necessary for the acquisition of Ann's interests pursuant to the agreement of January 27, 1947. Bills for her expenses were submitted directly to Hotels, Inc., and payments were made directly to her creditors. In no instance were any notes given by June for the amounts received by her, nor was there any understanding with regard to any repayment of these withdrawals. There was no agreement to pay interest on any balance of this account, and no interest was charged on the books of the corporation. No security was given for the repayment of these withdrawals, and no definite time was set for any repayment of the alleged loans. Over the period of the taxable years, some credits to this account were made. However, the net amount of the withdrawals increased steadily and in considerable amounts. Four of the Gilbert hotel corporations declared dividends in 1948. These were the only dividends declared during the taxable years by any of the corporations, although the surplus of Hotels, Inc., and the combined surpluses of the other corporations were increasing yearly. Originally these dividends were credited to June's accounts in 1948 but, later, entries were made reversing this and crediting the amounts to the estate.

These are factors supporting the respondent's determination that the withdrawals in reality constituted dividends. Petitioners, in arguing

that the withdrawals in reality constituted loans rather than dividends, point out as factors favoring their contention that petitioners and Hotels, Inc., recognized these withdrawals as liabilities in that they were set up on the corporation's books as debts on open account, that petitioners intended to repay to the corporation the amounts withdrawn, that substantial repayments were made, that the withdrawals were in no way proportionate to stock ownership, and that the earnings and profits of Hotels, Inc., were not sufficient to justify the treatment of these withdrawals as dividends.

The fact that the books of the corporation reflected these withdrawals in the form of open accounts is not a controlling factor in determining the intentions of the parties or, to be realistic, the intention of June since she controlled the corporation. June did not testify in these proceedings. The testimony of her husband as to her intention, to which no objection was made, is not helpful. We must determine what that intention was by circumstantial evidence. We conclude that during the taxable years June had no intention with regard to the repayment of these withdrawals, that she considered the corporation as hers, and intended to use its available funds as her own financial needs and conveniences dictated.

Insofar as June's financial needs and conveniences permitted, credits were made from time to time to this account, but there appears to have been no deliberate attempt on her part to take affirmative steps toward repayment or indicating an intention of repayment until after the taxable years and after respondent's investigation indicated the tax dangers of the situation. Then petitioners transferred their home to their controlled corporation at a valuation to which they as officers and directors of the corporation agreed, and leased it back for a rental to be paid the corporation, practically all of the common stock of which was to be owned by June within the year. This transaction itself indicates that no plans had been made for the repayment of the withdrawals since June apparently had no cash resources available for this purpose.

In connection with petitioners' contentions relating to intention and repayment, it is interesting to note the differences between June's withdrawals and those of Elliott. Elliott, who was not a stockholder of Hotels, Inc., but was merely a husband and employee, was permitted to make withdrawals only after he had established his own financial responsibility, his repayments on account were regular and really substantial, and he testified convincingly concerning his own intention of repayment. June was a stockholder and controlled the corporation, there were no limitations upon the extent of her withdrawals, the credits to her account were irregular and were so relatively unsubstantial that the balance of her account reflecting these

withdrawals increased from $3,336 to $211,199 in 6 years, and she failed to testify at the trial herein.

The fact that distributions may be in amounts which have no reference to the proportions in which stock is held is not controlling. *Lincoln Nat. Bank* v. *Burnet*, 63 F. 2d 131 (C. A., D. C., 1933) affirming 23 B. T. A. 1304 (1931); *Roy J. Kinnear*, 36 B. T. A. 153 (1937); *C. W. Murchison*, 32 B. T. A. 32 (1935). In this connection it may be pointed out that the case of *Ben R. Meyer, supra*, is authority for the proposition that the stock held by the estate of June's father, of which she was sole administratrix and heir and over which she held practical control and ultimate ownership, may be considered as hers in connection with this question.

This latter case has been cited by respondent in connection with petitioners' argument that the withdrawals cannot be distributions equivalent to the payment of dividends in that, or at least to the extent that, they are in excess of the earnings and profits of Hotels, Inc., available for the payment of dividends. Respondent argues that since the various corporations for which Hotels, Inc., acts as the management corporation are controlled by Hotels, Inc., or the estate of June's father, and since June controls Hotels, Inc., and the estate, it follows that the surplus accounts of these corporations must be considered in determining the amounts available for the payments of dividends by Hotels, Inc. In our opinion, that case is not pertinent and respondent's argument on this question is without merit. Although the circumstances here present are somewhat unusual, we know of no authority which would justify respondent in disregarding the separate corporate identity of the various corporations here involved in determining the earnings and profits, or surplus of Hotels, Inc., available for the payment of dividends, as "dividends" is defined in section 115 (a) of the Internal Revenue Code of 1939.

We conclude that the net withdrawals from Hotels, Inc., made by petitioner June during each of the taxable years, constituted distributions equivalent to the payment of dividends but only to the extent that the surplus or earnings and profits of Hotels, Inc. (and that corporation alone), were available for the payment of dividends.

As we have already pointed out, the remaining issues are both dependent on the result just reached. Because there was an omission of at least 25 per cent of gross income for each of the taxable years 1947 and 1948, the assessment of taxes for those years is not barred by the statute of limitations. The amount of the allowable deduction for medical expenses for the taxable year ended December 31, 1951, will be determined in the recomputations hereinafter to be filed.

*Decision will be entered under Rule 50.*