R. P. Kountz and Mabel Kountz v. Commissioner.
Kountz v. Commissioner
Docket No. 78463.
United States Tax Court
T.C. Memo 1962-29; 1962 Tax Ct. Memo LEXIS 280; 21 T.C.M. (CCH) 131; T.C.M. (RIA) 62029; February 12, 1962
Ben M. Davis, Esq., Mims Bldg., Abilene, Tex., for the petitioners. David E. Mills, Esq., and Allen T. Akin, Esq. for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1954, 1955, and 1956 in the respective amounts of $4,347.68, $2,538.24, and $1,717.57. *281 The issue for decision is whether petitioners received income from dividends from a corporation of which they were the sole stockholders during the years 1954, 1955, and 1956 in the amounts of $13,467.46, $10,905.22, and $6,399.28, respectively. Another issue raised by the pleadings has been conceded by petitioners. Findings of Fact Petitioners, husband and wife residing at Big Spring, Texas, filed joint Federal income tax returns for the calendar years 1954, 1955, and 1956 with the district director of internal revenue at Dallas, Texas. Petitioner, R. P. Kountz, hereinafter referred to as Kountz, during each of the years 1954, 1955, and 1956, was president of Kountz-Carter Supply Company, hereinafter sometimes referred to as Supply Co. Petitioner Mabel Kountz, hereinafter referred to as Mabel, was secretary of Supply Co. during these years. Supply Co. was incorporated under the laws of the State of Texas in 1946, and during the years here involved was engaged in the oil field supply business. There were 120 shares of outstanding stock of Supply Co. and during the years here involved Kountz held 40 shares, Mabel 40 shares, and the remaining 40 shares were held by the corporation. *282 During the years 1946 to 1959 Kountz and Mabel did not draw from the corporation regular salary checks as did the other employees of Supply Co. During these years there was carried on the books of Supply Co. an account in the name of Kountz, and a similar account in the name of Mabel. Withdrawals from Supply Co. by Kountz were listed as debits to his account on Supply Co.'s books and his account was credited each year with the salary as determined for him. Similarly, withdrawals from Supply Co. by Mabel were listed as debits to her account on Supply Co.'s books and her account was credited with the salary as determined for her. Withdrawals by Kountz and by Mabel were carried on the books of Supply Co. as receivables. During the years 1954, 1955, and 1956 Kountz's account with Supply Co. showed an increase in balance of debits over credits in the following amounts: 1954
$10,281.95
1955
6,915.21
1956
4,506.50 During the years 1954, 1955, and 1956 Mabel's account with Supply Co. showed an increase in balance of debits over credits in the following amounts: 1954
$ 5,182.20
1955
4,130.44
1956
2,479.22 In addition to the accounts in the name of *283 Kountz and Mabel, Supply Co.'s books carried an account, "R. P. Kountz - Special", which showed total withdrawals by Kountz in the year 1954 of $4,801 with no credit to the account in that year. Included in the charges to the account of Kountz and to the account of Mabel are both cash withdrawals by them and personal expenses paid by Supply Co. on their behalf. For the years 1955 and 1956, the only credits to Kountz's account are for salary. The only credit to Kountz's account in 1954 is in the amount of $368.90 under date of August 31. Respondent determined that Kountz received salary income from Supply Co. in 1954 in the amount of $7,500 and petitioners now concede the correctness of this determination. For the years 1954, 1955, and 1956 there are no credits to Mabel's account on Supply Co.'s books other than credits for salary. Salaries in the total amounts of $6,000 for 1955 and $9,000 for 1956 were credited to the accounts of Kountz and Mabel and reported as income on their joint income tax returns for those years. Neither Kountz nor Mabel gave any notes or security to Supply Co. for their withdrawals. No interest was provided for with respect to such withdrawals by either, *284 and none was paid. Kountz had no resources with which to repay withdrawals from Supply Co. other than earnings from that company and possible gains from certain speculative oil ventures in which he participated. Mabel had separate property of her own acquired through a previous marriage sufficient to have repaid the outstanding balances in her account at any time during the taxable years here involved, but she considered it her husband's duty to repay her withdrawals from Supply Co. and for that reason did nothing about repaying the withdrawals at that time. There was no limitation placed on the amounts that either Kountz or Mabel could withdraw from Supply Co. and no specific time set when any part of such withdrawals was to be repaid. The withdrawals were not for any special emergencies that occurred but were for day-to-day personal expenses of Kountz and Mabel and for Kountz's use in investment in various of his personal oil ventures. No formal dividends were declared at any time by Supply Co., and Supply Co. had during the years here involved adequate surplus to cover the amounts withdrawn by petitioners, its surplus as shown by its Federal income tax returns being $37,368.54, *285 $37,721.69, $42,641.85, and $41,765.41 at the end of its fiscal years ended June 30, 1954, 1955, 1956, and 1957, respectively. From the opening of the account for Kountz on Supply Co.'s books on July 1, 1946, through the period December 31, 1957, total withdrawals in the amount of $114,273.41 are shown; and with the exception of credits for salaries, there are 18 credits during this period to the account totaling $6,826.94. Of the total credits $4,000 represented payment by Kountz for subscription for 40 shares of stock in Supply Co. and $1,513.21 represented bookkeeping adjustments. Mabel's account showed total withdrawals for the period March 1, 1949, to December 31, 1957, of $50,125.53 and with the exception of salaries, it showed three credits during this period totaling $638.84, all of which were bookkeeping adjustments. The "R. P. Kountz - Special" account on Supply Co.'s books showed total withdrawals from October 31, 1954, to April 30, 1957, of $10,287.24 and a single credit to the account of $700 on April 30, 1957, which represented an amount salvaged from an oil venture of Kountz with one Walker and others. Where gains occurred from Kountz's speculative oil ventures which *286 had been financed by moneys he withdrew from Supply Co., such gains were not used to repay Supply Co., but were placed in other similar ventures. These oil ventures all resulted in ultimate losses. In 1956 Mabel borrowed $10,000 from a bank which was turned over to Supply Co. The books of Supply Co. reflected a note for $10,000 due the bank and the payment in full by it of this note in December 1956. In August of 1957 Mabel borrowed $21,500 from a bank of which $16,500 was turned over to Supply Co. As of June 30, 1959, Mabel's account with Supply Co. was credited with amounts shown as notes to this bank in the total amount of $14,500. In the latter part of 1957 a revenue agent had begun an examination of petitioners' returns for the years 1954, 1955, and 1956. Respondent determined that petitioners received dividend income in the amounts of $13,467.46, $10,905.22, and $6,399.28 for the years 1954, 1955, and 1956, respectively. Opinion The issue here involved is whether amounts withdrawn by petitioners from a corporation of which they were the sole stockholders should be deemed to be distribution of dividends within the meaning of sections 301(a) and 316(a) of the Internal Revenue Code *287 of 1954[1] or loans to petitioners from the corporation. Both parties recognize that the question *288 involved is factual and that the significant fact is the intent of the petitioners when they took the money. Wiese v. Commissioner, 93 F. 2d 921 (C.A. 8, 1938), affirming 35 B.T.A. 701 (1937), certiorari denied 304 U.S. 562 (1938). Respondent points out that the evidence shows that petitioners controlled the corporation being its sole stockholders; that no note or security was given for any of the advances and no interest on such advances was provided for; that no definite time was specified for repayment of the amounts withdrawn; that the withdrawals were in substantial amounts extending over a period of approximately 11 years; that there was no ceiling on the amount that petitioners could withdraw; that the withdrawals were for personal living and other personal expenses of petitioners and not for unusual non-recurring emergencies; that no dividends had been paid by the corporation throughout its existence even though it had earned surplus from which dividends might have been declared; and that one of the petitioners had no means of repayment other than his earnings as an officer of the corporation and the other petitioner considered that *289 it should be her husband who repaid the amount she withdrew. Cf. Elliott J. Roschuni, 29 T.C. 1193, 1201 (1958), affirmed 271 F. 2d 267 (C.A. 5, 1959), certiorari denied 362 U.S. 988 (1960). Petitioners rely primarily on the testimony of Kountz that he intended to make repayment and on the evidence that shows that Mabel did, in 1956 and 1957, borrow money which was turned over to the corporation of which $14,500 was credited to her account on June 30, 1959. Petitioners also rely upon the fact that Supply Co.'s records showed the balances in both the account of Kountz and that of Mabel as receivables. Neither the testimony of Kountz that he intended to repay the amount of the advances nor the entries on Supply Co.'s books showing the balance in the accounts as receivables is persuasive in the light of all the evidence. Ben R. Meyer, 45 B.T.A. 228, 240-241 (1941). The evidence shows only nominal credits to the accounts over a period of over 11 years other than the credits for salary. Kountz testified that he had no means of repaying the withdrawals he made from the corporation except by credits of salary and any gains he made *290 from his oil ventures. However, he further testified that parts of the withdrawals he made from Supply Co. were used in his oil ventures and that the income that he did receive from an originally successful venture went back into "dry holds" and was not applied toward the balance in his account on the books of Supply Co. The record shows that Mabel borrowed $10,000 from a bank in 1956 which was turned over to Supply Co. and was shown on the books of Supply Co. as an amount due to the bank and as being repaid to the bank by Supply Co. before the end of 1956. Petitioners argue that in fact in December 1956 when the note to the bank was paid by Supply Co., Mabel borrowed $3,000 from the bank which was turned over to Supply Co., but erroneously was not credited to her account until June 30, 1959. The credit to Mabel's account on June 30, 1959, in the amount of $14,500 is shown by the evidence but there is no evidence to show that any amount of such credit related to the $10,000 borrowed from a bank in 1956 and turned over by Mabel to Supply Co. The evidence shows that the $10,000 was repaid by Supply Co. to the bank in 1956. Mabel testified that she considered it the obligation of *291 her husband to pay the amounts shown as her withdrawals from Supply Co. Petitioners argue that the credit of $14,500 to Mabel's account on June 30, 1959, consists of the $3,000 which they contend should have been shown as a repayment in 1956 and $11,500 which represented a portion of a $21,500 loan made by Mabel in August 1957 of which $16,500 was turned over to Supply Co. The treatment of the $10,000 borrowed by Mabel from the bank and turned over to Supply Co. on the books of Supply Co. as its own obligation and the repayment of that amount by Supply Co. to the bank convinces us that this $10,000 was not intended by Mabel as a repayment of withdrawals nor so treated by Supply Co., but was the equivalent of Mabel's guarantee of a loan for Supply Co. There is insufficient evidence with respect to the loan made by Mabel from the bank in 1957 to convince us that the situation was not the same with respect to this loan. We are not, therefore, persuaded by Mabel's turning over money borrowed from the bank to Supply Co. that it was the intent of Mabel to repay any of her withdrawals from Supply Co. The facts in the instant case are clearly distinguishable from those in the cases relied *292 upon by petitioners. In Al Goodman, Inc., 23 T.C. 288 (1954), the advances were not for personal living expenses or the like but to aid the taxpayer there involved in a distressing circumstance. The debt was evidenced by an interest-bearing demand note and secured by the pledge of assets of the borrower, and the advance was approved at a meeting of the corporation's board of directors and stockholders. In Carl L. White, 17 T.C. 1562 (1952), the taxpayer was not in complete control of the corporation and there was no agreement, tacit or otherwise, among the stockholders authorizing the withdrawals. The evidence there also showed substantial repayments during the 3-year period ending with the taxable year there involved. In Comey & Johnson Co., 8 B.T.A. 52 (1927) substantial repayments had been made on the withdrawal account and a note given for its balance subsequent to the taxable year there involved. The taxpayer in the Comey & Johnson Co. case was financially able to pay the amounts withdrawn and recognized his liability to do so. The corporation had regularly declared dividends and the dividends of the taxpayer involved in that case were credited *293 against his withdrawal account. In the instant case the conduct of the parties with respect to the drawing accounts considered in conjunction with all other facts of record, supports an inference that the withdrawals here involved were not loans but were permanent distributions by the corporation to petitioners for their personal use. William C. Baird, 25 T.C. 387 (1955) and W. T. Wilson, 10 T.C. 251 (1948), affirmed 170 F. 2d 423 (C.A. 9, 1948), certiorari denied 336 U.S. 909 (1949). The record establishes for the years 1955 and 1956 that the net withdrawals by petitioners were in excess of the amounts determined by respondent to be dividends to them. The increase in the net balance of Kountz's account after the credit of salary thereto between December 31, 1954, and December 31, 1955, was $6,915.21, and the increase in the balance of Mabel's account during the same period was $4,130.44, the total of the two being in excess of the $10,905.22 dividend income determined by respondent for that year. The similar increase between the end of 1955 and 1956 in Kountz's account was $4,506.50 and in Mabel's, $2,479.22, a total in excess *294 of the $6,399.28 determined by respondent as the amount of dividend income for the year 1956. The net increase in the balance in Kountz's account from December 31, 1953, to December 31, 1954, was $10,281.95 and the similar increase in Mabel's account was $5,182.20. In addition, the amount withdrawn by Kountz and carried in the "R. P. Kountz - Special" account on Supply Co.'s books was $4,801 in the year 1954. The total of the three amounts of net withdrawal for the year 1954 is $20,265.15. The only credit to Kountz's account on Supply Co.'s books in the year 1954 is the amount of $368.90. There was no credit of salary to Kountz's account for 1954. Respondent in his deficiency notice determined that Kountz received salary income of $7,500 from Supply Co. in the year 1954 and petitioners have conceded the correctness of this determination. Since the total moneys taken by Kountz from Supply Co. are the withdrawals listed in his account and in the "R. P. Kountz - Special" account, the salary of $7,500 must be charged against the total withdrawals of $20,265.15 which leaves net withdrawals of $12,765.15. Respondent apparently does not question the validity of the one credit made to *295 Kountz's account in 1954 as being a legitimate credit. He attempts to justify his determination by a showing that the total net withdrawals by petitioners over the 3-year period (1954, 1955, and 1956) exceed the total amount determined by him to constitute dividends over the 3-year period. Respondent, in his brief, makes no argument with respect to the fact which is clearly shown by the evidence that the net withdrawal by petitioners in the year 1954 after the adjustment for Kountz's salary is less than the amount of his determination of dividend income in that year. The determination of taxable income is on a yearly basis, and if the dividend income determined by respondent were understated in 1955 and 1956, this does not of itself justify an overstatement in 1954. We, therefore, sustain respondent's determination with respect to the years 1955 and 1956 and for the year 1954 hold that petitioners received dividend income from Supply Co. in the amount of $12,765.15. [2]
*296 Decision will be entered under Rule 50. Footnotes
1. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * *
(c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount constituting dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. SEC. 316. DIVIDEND DEFINED. (a) General Rule. - For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *↩
2. The correct total of the withdrawals by Kountz in 1954, as shown by the copies of journal entries relied on by respondent, is only 20 cents in excess of the amounts shown on the general ledger but the credit of $368.90 is not made. The monthly totals of the withdrawals by Mabel in 1954 shown on the copies of journal entries relied on by respondent differ from the general ledger entries only with respect to January and December. For January, two entries totaling $193.41 as of January 1, 1954, are included by respondent but not on the general ledger, apparently having been recorded as applicable to 1953. Respondent included in December an entry of $150 made in January 1955 without explanation of the change.↩