Stanley and Florence Greenthal v. Commissioner.
Greenthal v. Commissioner
Docket No. 83944.
United States Tax Court
T.C. Memo 1962-126; 1962 Tax Ct. Memo LEXIS 182; 21 T.C.M. (CCH) 659; T.C.M. (RIA) 62126; May 25, 1962
*182 Allan A. Bakst, Esq., 152 W. 42nd St., New York, N. Y., for the petitioners. Ronald S. Schacht, Esq., for the respondent SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1954 in the amount of $11,494.60 and additions to the tax under sections 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939 in the respective amounts of $1,119.92 and $726.43. The issues for decision are: (1) Whether petitioners during the year 1954 received a dividend from a wholly owned corporation by the distributions of cash to one of them and to a builder who was constructing a house on property owned by another corporation in which one of petitioners and the wholly owned corporation were stockholders. (2) Whether respondent properly determined an addition to petitioners' tax for failure to file a declaration of estimated tax for the year 1954 under the provisions of section 294(d)(1)(A) of the Internal Revenue Code of 1939. Respondent has conceded that there is no addition to tax under section 294(d)(2) of the Internal Revenue Code of 1939 and has also conceded that the deficiency *183 should be reduced by a reduction in the dividend income as determined in the notice of deficiency from $30,439.45 to $29,310.61 since the latter amount constituted the earnings and profits of the corporation available for dividend in the year 1954. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, are individuals residing in Kings Point, Long Island, New York, who filed a joint Federal income tax return for the year 1954 with the district director of internal revenue at Brooklyn, New York. At all times here involved Stanley Greenthal (hereinafter referred to as petitioner) was the sole stockholder of Greenlash Operating Corporation (hereinafter referred to as Greenlash). Petitioner was also an officer of Advance Construction Corporation (hereinafter referred to as Advance), and at all times relevant hereto was a member of the board of directors of Advance. During the calendar year 1954 petitioner's father, Bernard Greenthal, owned 79 percent of the outstanding stock of Advance, Greenlash owned 9 percent, trustees, one of whom was petitioner, of a trust for the benefit of petitioner's children owned 9.6 percent, *184 and petitioner owned 2.4 percent. During the year 1953 petitioner was investigating the purchase of a new home or a building site for such a home in Westchester County, New York. Petitioner was an only child and petitioner's father wanted him and his family to live near his parent's residence. In late 1953 petitioner's father looked at a building site at 91 Red Brook Road, Kings Point, Long Island, and decided to have Advance acquire the property. On December 11, 1953, Advance purchased this property for a consideration of $7,600. The deed to the property is recorded in the name of Advance in the office of the Clerk of the County of Nassau. Advance, which was controlled by petitioner's father, acquired this land with the expectation of constructing thereon a one-family residence for occupancy by petitioner and his family. In furtherance of this plan a building contract was entered into with a contractor named Wallis, and this contract with Wallis was signed on March 30, 1954, by petitioner. Advance owned a building which it leased to five commercial tenants. The rent from this building was the only income received by Advance in 1954. Advance also owned farm land located in Essex *185 County, New Jersey. Advance did not have any current or accumulated earnings or profits during the period here involved. Greenlash owned and operated a two-story building located in Brooklyn, New York, the sole tenant of the building being a processor of wool yarn who paid rent to Greenlash of $13,200 in 1954. This rental payment was Greenlash's only income in the year 1954. In May 1954 Greenlash gave a mortgage on its real estate to the Ridgewood Savings Bank of Brooklyn for a loan of $40,000. The mortgage was payable in quarterly installments of $1,000 each over a 10-year period at 5 percent interest. Greenlash used $7,500.50 of the funds received from this mortgage to discharge a preexisting mortgage. During the period May 16, 1954, through December 6, 1954, checks in the total amount of $35,233.50 were drawn by Greenlash, signed by petitioner as president thereof and made payable to either petitioner, the contractor Wallis, or Wallis' subcontractors. Checks in the total amount of $24,607 were either drawn to the contractor or subcontractors, or where drawn to petitioner endorsed by him directly to the contractor or subcontractors. Without obtaining the funds received from *186 the $40,000 mortgage Greenlash would not have had sufficient cash to make the $35,233.50 payments. The total payments made to or on behalf of the contractor for the construction of the house on the Red Brook Road property amounted to $51,545.34. Petitioner personally paid approximately $16,000 of this cost. Both petitioner and his father participated in overseeing the construction of the house. The $35,233.50 disbursed by Greenlash as aforesaid was entered on the general ledger of Greenlash for 1954 as "mortgage receivable" and was shown on the balance sheet in Greenlash's 1954 income tax return under other investments totalling $38,540.98 with a notation "Stk. Rec." The name of Advance did not appear on the ledger account after the words "mortgage receivable" until after the year 1956. In April 1956 an examination of petitioner's income tax return for the year 1954 by an internal revenue agent was arranged for, and this examination was conducted in May 1956. On October 17, 1956, Advance signed a promissory note for $35,633.50 bearing interest at 4 percent per annum which it gave to Greenlash. Greenlash's books showed no accrual of interest in connection with the $35,233.50 until *187 after 1956. No entries with respect to the $35,233.50 appeared on Advance's books until sometime after June 1956. Starting in 1956 Advance took a deduction for depreciation on the Red Brook Road house and included the rental charged against petitioner's account in income. Real estate, school and sewer taxes, mortgage interest and amortization, insurance premiums, and other such expenses connected with ownership of the Red Brook Road property were billed to and paid for by Advance. On August 10, 1956, Advance borrowed $20,000 from the Liberty Savings and Loan Association and gave as collateral a mortgage on the house on Red Brook Road, and in connection with this transaction the Title Guarantee and Trust Company guaranteed that title to the premises was in Advance. The house on Red Brook Road was completed in February 1955 and in April 1955 petitioner's father became ill and was hospitalized. On June 9, 1956, petitioner's father died from this previously existing ailment. Petitioner's family moved into the house on Red Brook Road soon after its completion. No written lease agreement was entered into between petitioner and Advance until sometime after June 1956. The lease agreement *188 entered into called for a monthly rental payment by petitioner to Advance of $250, and the amount of the rental was charged on Advance's books against moneys owed to petitioner and for salary which Advance credited to petitioner's account. The $250 monthly rentals charged against petitioner's account by Advance was not sufficient to cover Advance's expenses plus depreciation on the house. Petitioner did not file a declaration of estimated tax for the year 1954. Respondent in the notice of deficiency increased petitioner's income by the amount of $30,439.45 with the designation "dividend income" and gave the following explanation: (a) It is held that, as a result of certain withdrawals of corporate funds from Greenlash Operating Corporation, you realized taxable income in the amount of $30,439.45 in 1954. Your taxable income has been increased accordingly. Opinion It is petitioner's contention that no distribution of any kind was made to him by Greenlash in 1954, that the checks drawn to him were with the understanding that they would be used as payment for the construction of a house to belong to Advance, that the house when completed did belong to Advance, and that, therefore, *189 petitioner received no moneys from Greenlash in 1954 which could constitute a dividend. Petitioner argues that if Greenlash had paid the amounts in issue directly to Advance instead of his being a conduit therefor, the issue involved herein never would have arisen. The parties are not in agreement as to whether petitioner was obligated to use the checks drawn to his own order by him as president of Greenlash for payment of the construction of the Red Brook Road house. In many respects this is a spurious issue in the case. Petitioner was the sole stockholder and president of Greenlash. He completely controlled the corporation. It is clear that he drew the checks here involved to his own order for the purpose of turning the money represented thereby over to the contractor building the Red Brook Road house in payment for the construction of that house. Under these circumstances we see no distinction between the checks being drawn to petitioner from their being drawn directly to the contractor or to Advance with the limitation that they be used for construction of the Red Brook Road house. The crux of the problem here involved stems from the fact that there was no business purpose *190 in Greenlash's borrowing funds and advancing these funds to Advance with no current written agreement with respect to repayment thereof or interest thereon. Subsequently Greenlash received Advance's promissory note for $35,633.50 bearing interest at 4 percent. To accept petitioner's position that the transaction here involved constituted a bona fide loan by Greenlash to Advance would require some explanation of a business purpose in Greenlash's borrowing money at 5 percent and lending it to Advance at 4 percent. No business reason for Greenlash's entering into such an arrangement has been shown. As we view the transaction Greenlash's only purpose was to accommodate petitioner who planned to occupy the house to be built by Advance. Cf. American Properties, Inc., 28 T.C. 1100 (1957) affd. 262 F. 2d 150 (C.A. 9, 1958). This conclusion is supported not only by the lack of business purpose from the standpoint of Greenlash's advancing money, but also by the fact that a period of approximately 2 years transpired between the advance of the money by Greenlash and the receipt by Greenlash of any evidence of indebtedness, as well as by the fact that the evidence of *191 indebtedness received by Greenlash was a note, which apparently from the evidence was not secured by a mortgage since there is no evidence of any written mortgage with respect to the Red Brook Road property, from Advance to Greenlash, even though Greenlash did carry the $35,233.50 on its books under the designation "mortgage receivable." While the evidence does show that Greenlash apparently entered as an accrual on its books interest on the note from Advance, there is no indication that this interest was paid or that the note was paid, except the testimony of an accountant that he thought that the note and interest were paid off in 1960 "by the estate." Petitioner in his argument relies on the fact that the house was owned by Advance and not by him as showing that the payments made by Greenlash were not dividends to him and cites in support thereof the case of Louis Greenspon, 23 T.C. 138 (1954), reversed on another issue 229 F. 2d 947 (C.A. 8, 1958). In Louis Greenspon, supra, we held that the cost of certain farm machinery purchased by a corporation, which retained title thereto during all of the periods involved, did not constitute a dividend *192 to the corporation's stockholder even though this farm machinery was used by the stockholder on his personal farm. We there stated that we were not deciding the question whether the stockholder should be charged with receiving income to the extent of the value of the use of the farm machinery since that question was not raised. In the instant case if Advance had raised the money from its own resources to build the house which was to be occupied by petitioner at a rental less than its fair value, we would have a case similar to Louis Greenspon, supra. However, we are here concerned with sums withdrawn from petitioner's wholly owned corporation for the purpose of constructing a house for petitioner's use where the title to the house was not acquired or retained by the corporation disbursing the funds. This distinction between the instant case and the Louis Greenspon case is a vital one. The situation here more closely resembles that with respect to the farm expenses charged to the corporation in Louis Greenspon, supra, or the payments made by the corporation for the construction, operation, and maintenance of boats used by its stockholder in American Properties, Inc., supra. *193 In American Properties, we stated (at page 1114): * * * We are satisfied that, irrespective of whether title to the boats was in the petitioner, such expenditures were made for his personal pleasure or to gratify his personal or civic pride in the accomplishments of these racing boats. The respondent's determination that these amounts are taxable to the individuals is prima facie correct and the petitioners have not shown error in his determination. It is well settled that payments made by a corporation on behalf of its stockholder may constitute taxable dividends to the stockholder. [cited cases] * * * Similarly, in the instant case irrespective of the fact that Advance held title to the house, the payments made by Greenlash were for petitioner's personal benefit and constituted dividends to him to the extent of the earnings and profits of Greenlash. Petitioner argues that it was for his father's benefit and to conform to his father's wishes that he lived in the Red Brook Road house instead of purchasing a home in Westchester County. Even if we assume that petitioner agreed to the entire arrangement with respect to the Red Brook Road house in deference to the wishes of his father, *194 his agreement thereto was nonetheless his own act and he and his family received the benefit of being supplied with a house at a rental less than a fair rental value of the property. The reason why petitioner decided to use the funds of his wholly owned corporation for his personal benefit does not change the fact that these funds were so used and that the use of the corporate funds in such a manner served no business purpose of the corporation, but served only the personal purposes of its sole stockholder. In the instant case the amounts were carried on Greenlash's books as "mortgage receivable" but the name of Advance was not used in connection with this account until sometime after 1956 after petitioner's income tax liability for the year 1954 had been investigated by an internal revenue agent. Advance's books did not show any account due to Greenlash until sometime after 1956. There apparently never existed any mortgage from Advance to Greenlash and no note evidencing an indebtedness until October 1956. Cf. Ben R. Meyer, 45 B.T.A. 228, 240 (1941). There is no evidence here that Greenlash ever paid a dividend. Petitioner personally paid approximately $16,000 toward *195 the construction of the Red Brook Road house and the evidence fails to show whether this amount was considered as a loan to Advance or a contribution to its capital. The $35,233.50 paid by Greenlash was as much for petitioner's benefit as his personal payment of $16,000 toward the construction of the house. No evidence was offered or argument made by petitioner with respect to the addition to the tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939 except that he contends that since respondent has conceded that the amount of the dividend income shown in the notice of deficiency was overstated, the addition to the tax is likewise overstated. Respondent concedes that the reduction in the deficiency in accordance with his concession will also result in a reduction in the addition to tax. We sustain respondent's determination with respect to both the deficiency in tax and the addition to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939, except to the extent of the concessions made by him. Decision will be entered under Rule 50.