George R. TOLLEFSEN and Margaret A. Tollefsen, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 582, Docket 34203.

United States Court of Appeals, Second Circuit.

Argued April 23, 1970.

Decided June 19, 1970.

Murray Kurman, New York City, for appellants.

William K. Hogan, Atty., Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and William Massar, Attys., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before MOORE and SMITH, Circuit Judges, and WEINFELD,* District Judge.

MOORE, Circuit Judge:

On this appeal we are asked to review the determination of the Tax Court that the withdrawals by George R. Tollefsen from Tollefsen Manufacturing Corp., the

* Of the Southern District of New York, sitting by designation.

wholly-owned subsidiary of Tollefsen Brothers, Inc., which in turn was owned by Tollefsen and his wife (taxpayers), were taxable dividends and not loans.

The facts were fully developed at an evidentiary proceeding before Judge Raum and in the findings that he filed with his opinion on July 24, 1969. 52 T.C. 671 (1969). For present purposes we will recite only those facts needed to present the circumstances in broad outline.

Tollefsen maintained control over a number of corporations in which he was the sole or principal shareholder. Among these was Tollefsen Brothers, Inc., incorporated in 1933 and owned by Tollefsen and his wife. From 1950 to 1955 that corporation had an exclusive contract to sell and distribute the products of Baldwin Hill Co., a manufacturer of abrasives. In 1955 Tollefsen Manufacturing Corp. was organized to carry on the manufacture of abrasives. To that end the fixed assets of Baldwin Hill were sold to Tollefsen Brothers and then transferred to Tollefsen Manufacturing. Eighty per cent of the stock of the newly organized Tollefsen Manufacturing was held by Tollefsen Brothers; the remaining twenty per cent, by a Mr. Hellerman, a former salesman for Tollefsen Brothers.

In 1960 another arrangement was devised. Hellerman organized Anchor Abrasive Corp. for the purpose of purchasing the fixed assets of Tollefsen Manufacturing. Hellerman's twenty per cent interest in Tollefsen Manufacturing was sold to Tollefsen Brothers. Tollefsen and Tollefsen Manufacturing covenanted not to compete in the abrasives field for five years. Tollefsen decided not to liquidate Tollefsen Manufacturing into Tollefsen Brothers for at least the five years during which competition was restricted. The net result of this transaction is that Tollefsen Manufacturing became a wholly-owned inactive subsidiary of Tollefsen Brothers.

Tollefsen began making cash withdrawals from Tollefsen Manufacturing after it had become an inactive wholly-owned subsidiary of Tollefsen Brothers.

A net withdrawal of $27,810.97 was made in 1960 and $24,665.40, in 1961. These amounts were reflected on Tollefsen Manufacturing's books as loans receivable, for which Tollefsen delivered promissory notes payable to Tollefsen Manufacturing. The money withdrawn was used by Tollefsen to go to Norway to investigate abrasives productions and to acquire interests, in his own name, in Nordic Ship Blasting Inc., Hose-McCann Electronics Corp., and Port-O'Call Corp. In June, 1964 the Internal Revenue Service began the audit which eventually culminated in the notice of deficiency in question in these proceedings. Thereafter from November 1964 until the date of the Tax Court hearing, credits in the amount of $11,916.80 were made in the account with Tollefsen Manufacturing. Two notes were marked to indicate repayment. During 1964 and 1965 Tollefsen assigned certain "claims" due him to Tollefsen Brothers, so that there was a credit balance in his account with Tollefsen Brothers in the amount of $43,166.46.

The Tax Court upheld the Commissioner's determination that the withdrawals from Tollefsen Manufacturing during 1961 constituted taxable dividends. The court concluded that "at the time of the withdrawals here in issue Tollefsen did not intend to repay such amounts to Tollefsen Manufacturing." 52 T.C. 671, 678. Having made this factual finding, the court concluded that the amounts "were in substance distributions to Tollefsen Bros. from its subsidiary Tollefsen Manufacturing, with a resulting constructive dividend to petitioners, the sole shareholders of Tollefsen Bros." 52 T.C. 671, 681.

It is an often repeated principle of tax law that the form into which a taxpayer casts a transaction will not obliterate the tax consequences that emerge from the substance of the transaction. This principle has been applied to situations wherein shareholders of a closely held corporation have made withdrawals in the form of "loans" which have been treated as a "distribution of property * * * made by a corpora-

tion to a shareholder with respect to its stock * * * " for the purposes of section 301 of the Internal Revenue Code. E.g., Regensburg v. Commissioner of Internal Revenue, 144 F.2d 41 (2d Cir.), cert. denied, 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625 (1944); Oyster Shell Prods. Corp. v. Commissioner of Internal Revenue, 313 F.2d 449 (2d Cir. 1963). The controlling question in making such a determination, as recognized by the Tax Court, is whether there was an intent to make a loan, i. e., whether repayment was in fact contemplated by the parties. The courts have considered many factors to find outward manifestations of such an intent. See, Comment, Disguised Dividends: A Comprehensive Survey, 3 U.C.L.A.L.Rev. 207, 222–28 (1956); Werner, Stockholder Withdrawals—Loans or Dividends? 10 Tax L. Rev. 569 (1955). The determination of whether the withdrawal is a loan or a dividend is a question of fact which a circuit court of appeals cannot alter unless the determination is not supported by substantial evidence. Commissioner v. Scottish American Inv. Co., 323 U.S. 119, 123–124, 65 S.Ct. 169, 89 L.Ed. 113 (1944); Regensburg v. Commissioner of Internal Revenue, *supra*; Sala v. Commissioner of Internal Revenue, 146 F.2d 228 (2d Cir. 1944); cf. United States v. Stanton, 287 F.2d 876 (2d Cir. 1961) (review of district court).

█ In the case at bar we cannot say that the Tax Court lacked a substantial basis in drawing the inference that there was no intent to repay. Support for the determination is found in the facts that there was no formal repayment until after the audit was begun, that the withdrawals were used to acquire personal interests in business ven-

tures and the assignment of claims to Tollefsen Brothers was not intended to discharge the obligation to Tollefsen Manufacturing. In evaluating the demeanor of Tollefsen, whose testimony would be important in establishing the intent of the transaction, the court stated that its confidence was "greatly shook" by his statement that the withdrawals were to carry on the activities of Tollefsen Manufacturing during the period of competition restriction. 52 T. C. 671, 679. Such an explanation was "completely spurious" since Tollefsen himself was equally restrained by the covenant not to compete. *Id.* The court also rejected explanations offered by Tollefsen that his financial ability to repay the "loans" indicated an intention to do so and that this withdrawal was a part of a pattern of bona fide reciprocal loans to and from his corporations.

A distribution made by a corporation to a shareholder with respect to its stock is a dividend, and so includable in gross income, if it is made out of current or accumulated earnings and profits. Int. Rev.Code of 1954, §§ 301(b), 316(a). As of December 31, 1961, Tollefsen Brothers had "earned surplus and undivided profits" in the amount of $72,019.-48. As of November 30, 1961, Tollefsen Manufacturing has a similar account in the amount of $38,357.29. From 1956 to the date of the hearing below, neither corporation had ever declared and paid a dividend. The earnings and profits of either corporation would have been sufficient to make a $24,665.40 distribution in 1961 constitute a "dividend." Nevertheless, the court must be explicit in articulating the theory under which Tollefsen can be said to have received a *"dividend."*[1]

---

[1] "The characterization of an amount received by a shareholder, directly or indirectly, from his corporation may be important in determining (a) whether the corporation may deduct it, (b) whether it reduces the corporation's current earnings and profits in computing taxability of current distributions or merely reduces the earnings available for future distributions, (c) whether the recipient must treat it as ordinary gross income under § 61(a) or may treat it in whole or in part as a return of capital under § 301 (c), and (d) whether the recipient is entitled to the dividends received exclusion of § 116 or intercorporate dividends received deduction of § 243."

Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders 166 (2d ed. 1966).

The presence of a parent corporation as a vehicle through which the taxpayer controls the corporation from which the withdrawal was made adds a factor which was not present in *Regensburg, supra,* or *Oyster Shell, supra.* Earlier cases confronted with this additional formal complication have adopted one of two approaches. They have either looked through the form of the corporate organization and recognized the individual taxpayer as a "shareholder" of the distributing corporation within the purview of section 301(a), Meyer, 45 B.T.A. 228, 237–238 (1941); or, they have analyzed the whole transaction as in reality consisting of an indirect distribution from the parent which distribution was caused to be paid from the controlled subsidiary as a conduit, Kaplan, 43 T.C. 580, 592 (1965). In *Meyer* the distributions were taxable as dividends to the extent of the subsidiary's earnings and profits, while in *Kaplan* they were taxable to the extent of the parent's earnings and profits. In the case at bar, the court characterized the transaction as in reality consisting of two steps—"a transfer from Tollefsen Manufacturing to its parent, followed by a transfer from the parent to Tollefsen." 52 T.C. 671, 681. Both *Meyer* and *Kaplan* are cited in the Tax Court's opinion. We regard the situation at bar to be closer to *Kaplan* than to *Meyer.* Indeed, the Commissioner eschews reliance upon *Meyer* in his brief. Appellee's brief at 21. Any differences between *Kaplan* and the case at bar would be reflected in the tax consequences to the corporate entities—an issue not now before us.

We affirm the Tax Court's holding that the withdrawals were dividends from Tollefsen Brothers. This holding makes irrelevant Tollefsen's arguments that Tollefsen Brothers cannot be considered a "shell" or a "dummy" corporation and that he cannot be considered a "shareholder" of Tollefsen Manufacturing. No advantage is to be derived from section 243(a) (1) of the Code, providing an eighty-five per cent deduction for certain qualifying intercorporate dividends, since that section on its face applies only to corporate, not individual, taxpayers. As stated above, the tax consequences to the corporations involved are not before us.

There is no merit in the argument that the Commissioner is estopped from treating the 1961 withdrawals as dividends without urging similar treatment for the 1960 withdrawals. When the Commissioner issued his formal notice of deficiency in January 1967, he included only the 1961 return because he thought the statute of limitations had run on the 1960 return. Now it is revealed that a six-year limitations period was applicable and a deficiency notice for the 1960 return would have been timely. Int.Rev.Code of 1954, § 6501(e) (1). Such a mistake of law is not a circumstance which calls for the invocation of the doctrine of equitable estoppel. See Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); Caldwell v. Commissioner of Internal Revenue, 202 F.2d 112, 115 (2d Cir. 1953).

The decision of the Tax Court is affirmed.