*Decision will be entered under Rule 50.*

THE OGDEN COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1840–66, 1841–66, 1842–66.   Filed September 30, 1968.

*Walter F. Gibbons*, for the petitioner.
*Rufus Stetson*, for the respondent.

DRENNEN, *Judge:* The respondent determined a deficiency in income tax of the Ogden Co. for the calendar year 1960 of $271,032.80; for the calendar year 1961 of $282,607.60; and for the calendar year 1962 of $282,586.37. The deficiency with respect to each year consists of increased corporate income tax and the imposition of the personal holding company tax under section 541, I.R.C. 1954. The deficiencies were determined alternatively for the 3 years in question; consequently, if respondent's position is upheld it will be for any 1 year; only the deficiency with respect to that year will be assessed. The issue for decision with respect to each of the years in question is as follows: For the taxable year 1962, whether petitioner received a dividend, when on January 4, 1962, National Ring Traveler Co., a wholly owned subsidiary of petitioner (hereinafter referred to as Ring), instructed Rhode Island Hospital Trust Co. (hereinafter referred to as Trust Co.) to liquidate petitioner's debt to the Trust Co. by sale of short-term Treasury bills which Ring had pledged as security for the loan; for 1961, whether petitioner received a dividend on November 27, 1961, when Ring pledged short-term Treasury bills as security for a loan of $615,000 from Trust Co. to petitioner, the security to be used to pay the loan; for 1960, whether petitioner received a dividend when on April 19, 1960, and on occasions thereafter in 1960, Ring loaned money in the amount of $615,000 to petitioner to finance the purchase by petitioner of the stock of Ring. If respondent's position is upheld for 1 of the 3 years, there is no dispute over the amounts and types of taxes to be imposed.

### FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated by this reference.

The Ogden Co. (hereinafter referred to as petitioner or Ogden) is a Rhode Island corporation, which was incorporated on April 15, 1960. For the taxable years 1960, 1961, and 1962 it filed its Federal income tax returns with the district director of internal revenue at Providence, R.I. The capital with which petitioner was incorporated was $20,000, represented by 40 shares of no-par-value common stock held by four Salmanson brothers as follows:

| Name | Shares |
| --- | --- |
| Leonard I. Salmanson | 10 |
| Donald Salmanson | 10 |
| Charles Salmanson | 10 |
| Samuel Salmanson | 10 |

The Salmanson brothers were engaged in numerous other business ventures together, usually in corporate form, including the operation of a chain of 90 drugstores.

Ring is a Rhode Island corporation, organized in 1881, which was engaged in manufacturing textile supplies and jewelry. On March 31, 1960, Ring had outstanding 4,149 shares of common stock.

Ogden was formed by the Salmanson brothers to acquire the stock of Ring, which was being offered for sale by its numerous stockholders through an agent. In April 1960, Leonard I. Salmanson, acting as agent for Ogden, offered to purchase all of the stock of Ring for $174 per share, or a total purchase price of $746,820,[1] which offer was accepted. The 4,149 shares of stock of Ring were first transferred to Leonard I. Salmanson and 4,149 new shares were thereafter issued to Ogden in place of the old shares, in April 1960.

In order to finance the acquisition of the Ring stock, Ogden borrowed $495,000 from Trust Co. and additional loans were made to Ogden by Gansett Co. and the Hull Co., two corporations owned by the Salmanson brothers. Shortly after the acquisition of its stock by Ogden, Ring advanced to Ogden the sum of $495,000 which was used by Ogden to discharge the loan from Trust Co. Thereafter, during 1960, Ring advanced additional sums aggregating $120,000 to Ogden on open account. On the balance sheet of Ring as of December 31, 1960, the entire $615,000 was shown as an asset "Due from The Ogden Company—615,000." The entire $615,000 was reflected on the balance sheet of Ogden as of December 31, 1960, as a liability "Due to National Ring Traveler Company—$615,000."

On November 27, 1961, the following events took place:

(a) Ogden borrowed $615,000 from Trust Co.

(b) Ogden issued its check in the amount of $615,000 payable to Ring, which was credited to the amount owed Ring by Ogden.

(c) Ring issued its check in the amount of $615,000 payable to Trust Co. for the purchase of short-term U.S. Treasury bills.[2]

(d) Ring pledged the Treasury bills to Trust Co. as security for the loan of $615,000 made by Trust Co. to petitioner.

The balance sheet of Ring as of December 31, 1961, reflects the investment in the Treasury bills as an asset [2] and no amount due from Ogden, with a footnote indicating that the Treasury bills are pledged as collateral security for the loan from Trust Co. to Ogden. The balance sheet of Ogden as of December 31, 1961, reflects a liability of $615,000 on a note due the bank, secured by the Treasury bills pledged by Ring; no liability to Ring is reflected on the balance sheet.

On January 4, 1962, on instructions from Ring, Trust Co. redeemed the Treasury bills and applied the proceeds against the amount due from Ogden to Trust Co., which amount was $615,000 plus interest of $2,921.25. Ring also paid the interest due on Ogden's liability to Trust Co.

On January 4, 1962, Ogden issued and delivered its unsecured, non-interest-bearing, demand promissory note in the principal amount of

---

[1] This is the amount of the investment shown on Ogden's income tax returns.

[2] The amount of this check is stipulated. However, the balance sheet of Ring as of Dec. 31, 1961, reflects an investment of $613,432.43 in these Treasury bills.

$615,000 to Ring. The balance sheet of Ogden as of December 31, 1962, reflects as a liability "Due to National Ring Traveler Company—$615,000." The balance sheet of Ring as of December 31, 1962, discloses as an asset "Due from The Ogden Company—$615,000."

The above transaction starting on November 27, 1961, and ending on January 4, 1962, was arranged in advance because petitioner's accountants felt that it would be advisable, for yearend statement purposes, to substitute a bank loan for the loan from Ring.

The officers of both Ogden and Ring at all material times were as follows: Leonard I. Salmanson, president; Donald Salmanson, vice president; Charles Salmanson, treasurer; Samuel Salmanson, secretary.

At or about the time Ogden was formed to acquire the stock of Ring, the Salmanson brothers had two ideas in mind with respect to the two companies. One was to merge Ogden with several other corporations owned by the Salmansons and several other corporations to be acquired to operate as a conglomerate. This idea did not materialize. The other was to expand Ring and add a new line of business—nylon ring travelers—which would require a substantial amount of new and expensive equipment. This plan was never undertaken.

At all times material Ogden engaged in no business activities except holding Ring's stock, and it had no source of income. Its only asset was the stock of Ring. At the time of this trial Ogden had made no payments of principal or interest on its note to Ring. The Salmanson brothers were financially able to make enough money available to Ogden to repay the amount advanced by Ring to Ogden if Ring needed the money.

The earned surplus of Ring reflected on its stipulated balance sheets, as of December 31, was as follows for the years indicated:

| Year ending Dec. 31— | Amount |
|---|---|
| 1960 | $315, 889. 96 |
| 1961 | 329, 559. 10 |
| 1962 | 302, 070. 15 |

OPINION

There is little dispute about the facts in this case; the dispute is as to the intent of the parties in carrying out the various transactions and whether the substance of the transactions amounted to bona fide loans by Ring to Ogden or the distribution of dividends by Ring to Ogden.

In summary, the facts are that in 1960, the Salmanson brothers formed Ogden with a capitalization of $20,000 to acquire all of the stock of Ring; Ogden borrowed $495,000 from Trust Co. and additional amounts from other Salmanson corporations to pay for the Ring stock; after Ogden acquired the stock Ring advanced Ogden $495,000, evidenced by a note, which money was used to pay Ogden's loan from

Trust Co.; and subsequently, during 1960, Ring advanced Ogden an additional $120,000 on open account. In November of 1961 Ogden borrowed $615,000 from Trust Co. which was applied against the advances previously made by Ring to Ogden, and on the same day Ring used the funds to acquire $615,000 face value of short-term Treasury bills which it pledged to secure Ogden's note to Trust Co. On January 4, 1962, the Treasury bills were redeemed and, at Ring's instructions, Trust Co. applied the proceeds to pay off Ogden's notes to Trust Co. Ring also paid the interest due on the note. Thereafter, Ogden issued a non-interest-bearing, unsecured demand note, dated January 4, 1962, payable to Ring in the amount of $615,000. No payments have been made of either principal or interest on the note by Ogden. Ogden has engaged in no business activities since it was organized, its only asset has been the Ring stock, and it reported no income for the years 1960, 1961, and 1962.

Respondent determined, in the alternative, that Ring made a distribution equivalent to a dividend to Ogden either on January 4, 1962, when it applied the proceeds from the sale of its Treasury bills to the payment of Ogden's indebtedness to Trust Co.; or on November 27, 1961, when it pledged its Treasury bills as collateral security for the payment of Ogden's note to Trust Co. with the understanding that when the bills were redeemed on January 4, 1962, the proceeds would be applied on Ogden's indebtedness to Trust Co.; or in 1960, when Ring originally advanced Ogden $615,000 to pay for Ring's stock.

Petitioner contends that the advances made by Ring to Ogden were at all times bona fide loans and that none of the transactions were equivalent to a distribution of a dividend from Ring to Ogden; and, that the transaction starting on November 27, 1961, and culminating on January 4, 1962, was all a part of a prearranged plan, conceived by petitioner's accountants to improve the appearance of Ogden's and Ring's balance sheets as of December 31, 1961, and should have no legal significance.

We think it is quite clear from all the evidence that the series of transactions whereby Ring advanced Ogden $615,000 and ended up in January of 1962 holding Ogden's unsecured demand note for that amount resulted in a distribution by Ring to Ogden substantially equivalent to a dividend and did not involve a bona fide loan from Ring to Ogden. Whether a distribution of funds by a corporation to or for the benefit of its stockholders constitutes a loan or a dividend is a question of fact to be determined from all the facts and circumstances. *Wiese* v. *Commissioner*, 93 F. 2d 921; *Regensburg* v. *Commissioner*, 144 F. 2d 41. The substance of what actually was done is determinative of the legal consequences of the action rather than the form in which it was cast. *Ben R. Meyer*, 45 B.T.A. 228.

The advances were obviously made in the first instance to enable Ogden to acquire and pay for the Ring stock. No other purpose is suggested by the evidence and this is what the advances were actually used for. Petitioner argues that the advances were intended as loans and were intended to be repaid as evidenced by the notes executed by Ogden and the entries made in the books of both Ogden and Ring. While evidence of this sort will be given consideration in deciding the import of the transaction in a situation like this, it will not be given great weight where absolute control of both corporations is in the hands of the same persons who could determine at their own discretion whether and when the advances would be repaid.

Here, Ogden had no source of income with which to repay the advances unless it became engaged in some income-producing activity, which it did not do, or unless it sold the Ring stock, which would defeat the very purpose for which the advances were made. Leonard I. Salmanson testified that a note was given by Ogden to Ring evidencing the original $495,000 advanced, but this note was not offered in evidence because Salmanson said it was destroyed when the note for $615,000 was issued. From the evidence we have, if such a note was issued, it was a demand note with no fixed maturity date, bearing no interest, and was unsecured. The same thing can be said of the $615,000 note issued on January 4, 1962. No payments of either principal or interest were made on either of these notes and we must conclude that there was no intent to repay, or prospect of repaying, these advances unless Ogden became engaged in some income-producing activity, which it never did. There is little likelihood that any unrelated party would loan money to Ogden under similar circumstances. "The classic debt is an unqualified obligation to pay a sum certain at a reasonably close fixed maturity date along with a fixed percentage in interest payable regardless of the debtor's income." (4A Mertens, Law of Federal Income Taxation, sec. 26.10, p. 46.) We conclude from all the evidence that the advances made by Ring to, or for the benefit of, Ogden were not bona fide loans, either in the classic sense or in the ordinary business sense.

The term "dividend" is defined in section 316, I.R.C. 1954, as meaning any distribution of property made by a corporation to its shareholders out of its earnings and profits accumulated after February 28, 1913, or out of its earnings and profits of the taxable year. Respondent determined, alternatively, that the advances made to or for the benefit of Ogden by Ring were dividends to the extent of the accumulated earnings and profits reported on Ring's income tax returns for each of the years 1960, 1961, and 1962 and we agree with respondent's determinations on the basis of the evidence presented. Respondent's determination is presumed to be correct, at least for the year 1962.

Having determined that the advances were dividends and not bona fide loans, it is still necessary to determine in which year the distribu-

tions are taxable as dividends to Ogden. Respondent argues primarily that the transaction whereby Ring applied the proceeds of the sale of its Treasury bills to the discharge of Ogden's debt to Trust Co. on January 4, 1962, is the taxable transaction. Petitioner argues in the alternative on brief that if the advances are determined to be dividends rather than bona fide loans, the taxable transaction occurred in 1960 when the original advances were made rather than in 1962, because the transaction starting on November 27, 1961, and ending on January 4, 1962, was simply an accounting matter that had no legal significance. The reason for this alternative argument is explained in the footnote below.[3]

We agree with respondent's primary determination, which carries the presumption of correctness, that the taxable transaction occurred in 1962. We are quite doubtful that there could have been much expectation that Ogden would be able to repay the original advances made in 1960. However, Leonard I. Salmanson did testify that when Ogden was first formed and acquired the stock of Ring he and his brothers had plans to merge Ogden with several other manufacturing businesses, some of which they owned and some of which they did not own, and that it was anticipated that Ogden might have some income with which to repay the advances. Admittedly these plans seemed rather nebulous, but this was petitioner's evidence. On the other hand, there can be no question that on January 4, 1962, Ogden was indebted to Trust Co. in a bona fide transaction in the amount of $615,000 plus interest, and that Ring used its assets to discharge that indebtedness of its sole stockholder. It has been held that the payment or discharge of one person's debt by another for his benefit is income to the debtor. *Old Colony Tr. Co.* v. *Commissioner*, 279 U.S. 716. The payment by Ring of Ogden's debt to Trust Co. was the same as a distribution by Ring of its property to Ogden and Ogden's use thereof to discharge the indebtedness, *Wall* v. *United States*, 164 F.2d 462; thus the payment of Ogden's debt by Ring was a dividend to Ogden, particularly, as here, where there was no intention or ability on the part of Ogden to repay the

---

[3] Petitioner contends that inasmuch as the statute of limitations bars assessment of tax against Ogden for the years 1960 and 1961 unless respondent proves that Ogden omitted more than 25 percent of its taxable income from its returns, the burden is on respondent to prove that the advances made to Ogden by Ring in either 1960 or 1961 were taxable dividends; and that, inasmuch as respondent has failed to prove that Ring's accumulated earnings and profits in those years were accumulated subsequent to Feb. 28, 1913, respondent has failed to carry his burden of proving that any advances made by Ring to or for the benefit of Ogden during either of these years were taxable dividends. This argument was mentioned for the first time in this record in petitioner's original brief. In the light of our conclusion that the taxable distribution occurred in 1962, we need not decide this point, but we are constrained to note that if we were required to decide this issue, we would conclude, first, that the issue was raised too late and is not properly before the Court and, second, that if it was before the Court we would accept the earned surplus reflected on the balance sheets of Ring stipulated into evidence as prima facie proof that the distributions, to the extent of the earned surplus reflected thereon, were paid out of earnings and profits accumulated after Feb. 28, 1913.

amount to Ring, and the issuance of a demand note, without security or guarantee, or interest or prospects of payment, by Ogden to Ring, did not change the character of the payments in Ogden's behalf from a dividend to a loan. *E. T. Griswold*, 45 T.C. 463, aff'd. 400 F.2d 427 (C.A. 5, 1968). By 1962 the Salmansons had apparently abandoned any plans they had to activate Ogden as an operating entity and the note issued by Ogden to Ring did not evidence a bona fide loan.

We conclude that petitioner received a taxable dividend from Ring in 1962 in the amount determined by respondent and that it did not receive a taxable dividend from Ring in either 1960 or 1961.

Petitioner acknowledges that in any year it should be determined that petitioner received a dividend from Ring, it qualified as a personal holding company under section 542, I.R.C. 1954.

> *Decision will be entered for the respondent in docket No. 1841–66.*
>
> *Decisions will be entered for the petitioner in docket Nos. 1840–66 and 1842–66.*