Carlotta Granzotto v. Commissioner.Granzotto v. CommissionerDocket No. 3758-69.United States Tax CourtT.C. Memo 1971-106; 1971 Tax Ct. Memo LEXIS 224; 30 T.C.M. (CCH) 457; T.C.M. (RIA) 71106; May 17, 1971, Filed. Charles A. Wood, Jr., Locust and Bonanzasts., Walnut Creek, Calif., for the petitioner. John Gigounas, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1962, 1963, and 1964 in the amounts of $14,542.84, $12,752.30 and $9,147.31, respectively. The sole issue for decision is whether cash transfers from the Granzotto Trucking Co., Inc., to the petitioner in each of the 458 taxable years in issue were loans to petitioner or constituted dividends. Findings of Fact Some of the facts have been stipulated and are found accordingly. Carlotta Granzotto (hereinafter referred to as petitioner) resided in Walnut Creek, California, *225 at the time of the filing of her petition in this case. Petitioner filed her individual income tax returns for the calendar years 1962, 1963, and 1964, with the district director of internal revenue, San Francisco, California. Granzotto Trucking Co., Inc. (hereinafter referred to as corporation), was formed by petitioner's husband who died on December 16, 1960, and was incorporated under the laws of the State of California in 1954. Petitioner succeeded her husband as president of the corporation, and has held the office ever since, including the years in issue. During the years in issue, petitioner was in substantial control of all the operations including stock ownership of the corporation. The issued outstanding shares of the corporation during the years in issue were as follows: No. of SharesCarlotta Granzotto (petitioner)549Antonette A. Quattrin (petitioner's daughter)150Roy Querio (petitioner's son-in-law)1Barbara Querio (petitioner's daugh- ter)150Farry N. Granzotto (petitioner's son) 150Total shares outstanding1,000 The 450 shares of stock owned by petitioner's two daughters and her son had been given to them by their father prior*226 to his death. During all of the years in issue the officers of the corporation were as follows: Carlotta Granzotto (petitioner)PresidentRoy F. Querio (petitioner's son-in law)TreasurerBarbara Querio (petitioner's daugh- ter)Secretary The officers of the corporation also composed the corporati The officers of the corporation also composed the corporation's board of directors. Petitioner's duties as president consisted of general supervision of the corporation's activities and financial affairs, including the making of policy decisions, collecting accounts, dispatching trucks, and other administrative duties. Granzotto Trucking Co., Inc. filed its income tax returns for its fiscal years ended March 31, 1962, March 31, 1963, March 31, 1964 and the short period ended December 31, 1964, with the district director of internal revenue, San Francisco, California. The corporation had the following earned surplus during the years in issue: Year EndedAmount3-31-61$ 42,523.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,029.163-31-63114,412.873-31-64178,040.6412-31-64265,900.00The corporation did not make any formal dividend distributions during any of the above*227 fiscal years, nor has it ever made any dividend distributions since its incorporation in 1954. During the calendar years 1962, 1963 and 1964, petitioner made three cash withdrawals from the corporation as follows: AmountMarch 9, 1962$30,029.00February 26, 196320,978.00September 17, 196417,700.00 The withdrawals were made by checks signed by the petitioner and were recorded in the corporation's books of account and financial statements as loans receivable. The corporation furnished financial statements showing petitioner's withdrawals to the Public Utilities Commission of the State of California and to the Interstate Commerce Commission of the United States. In each instance that a withdrawal was made petitioner issued a note payable to the corporation. Petitioner's notes were payable on demand, were non-interest bearing and were not secured by any collateral security. The withdrawals were not used to benefit the corporation nor were they restricted as to use. Petitioner used the funds to pay Federal estate taxes incurred on account of her husband's death, as to the first withdrawal, to construct a gas station on certain unimproved realty which*228 she owned, as to the second withdrawal, and to pay State inheritance taxes incurred on account of her husband's death and gift tax with respect to her husband's gift of stock to their children, as to the third withdrawal. There were no corporate minutes or resolutions by the corporation's board of directors authorizing the withdrawals. However, the other directors and shareholders were aware of the proposed 459 withdrawals and made no objection to the transfers of funds. Petitioner had sources of credit available to her other than the corporation from which she could have borrowed funds to the same extent as the withdrawals. In addition, petitioner had sufficient assets at her disposal with which she could have repaid the withdrawals to the corporation. The corporation made no demand on petitioner for repayment of the withdrawals nor did it initiate any enforced collection procedure. No cash repayments were made to the corporation by the petitioner for the withdrawals, except for an offset made to the account of an amount of $16,949.69 petitioner loaned the corporation in 1966 to use to pay one installment of its 1965 income tax in the amount of $13,999.69 and an undisclosed*229 expense of $2,950.00. The $16,949.69 was originally shown on the corporate books as a loan to the corporation from petitioner but after an internal revenue agent had raised the dividend issue, the corporation offset the amount loaned by petitioner against a portion of the loans receivable from petitioner as shown on its books and records. Petitioner on her Federal income tax returns for the years 1962, 1963, and 1964 reported no income from dividends. Respondent in his notice of deficiency determined that petitioner received dividend income from the corporation of $30,029, $20,978, and $17,700, respectively, for these years by considering the withdrawals petitioner made from the corporation in these years to be dividends. Ultimate Finding of Fact The amounts received by petitioner from the Granzotto Trucking Co., Inc., in 1962, 1963 and 1964 in the amounts of $30,029, $20,978, and $17,700, respectively, were dividend distributions to petitioner by the corporation and not bona fide loans. Opinion Whether withdrawals by a stockholder from a corporation are loans or are dividends within*230 the meaning of section 316(a) of the Internal Revenue Code of 1954 is a question of fact. In resolving this factual issue consideration must be given to all the circumstances surrounding the transaction. Clark v. C.I.R., 266 F. 2d 698, 710-711 (C.A. 9, 1959) affirming on this issue a memorandum opinion of this Court; Harry E. Wiese, 35 B.T.A. 701 (1937) aff'd. 93 F. 2d 921 (C.A. 8, 1938). The character of the transaction depends upon the intent of the taxpayer when the withdrawals were made. Carl L. White, 17 T.C. 1562 (1952). It is well established that a corporation can lend its funds and that such privilege is not restricted to making loans to persons other than its shareholders. Harry E. Wiese, supra, p. 704. However, the fact that here the corporation is closely held with petitioner owning the controlling interest calls for careful scrutiny of the transactions. William C. Baird 25 T.C. 387, 393 (1955). We have found as a fact that the withdrawals by petitioner from the corporation*231 were treated as loans on the corporate books. The treatment of withdrawals as loans or receivables on the corporate records is evidentiary but not conclusive. Jacob M. Kaplan, 43 T.C. 580, 595 (1965). The fact that the corporation reflected the withdrawals as loans on financial statements submitted to both state and Federal agencies is to be considered along with the corporate bookkeeping entries. Al Goodman, Inc., 23 T.C. 288, 301 (1954). At the time the funds were withdrawn from the corporation, petitioner executed unsecured non-interest bearing notes. While the issuance of notes is normally reflective of the existence of a debtor-creditor relationship, their presence under the circumstances here shown does not warrant weighty significance as indicating that petitioner's withdrawals constituted loans. Ben R. Meyer, 45 B.T.A. 228, 240 (1941). While in some circumstances there is no greater significance to the fact that the notes were non-interest bearing, *232 Irving T. Bush, 45 B.T.A. 609 (1941), remanded without consideration of this point 133 F. 2d 1005 (C.A. 2, 1943), where the amounts are outstanding for a number of years, the fact that the notes bear no interest is some indication that the withdrawals were not in fact intended as loans. While the fact that petitioner's notes were not secured by any collateral is a consideration bearing on the general issue, it is not controlling. Harry E Wiese, supra, p. 704. Since its incorporation in 1954, the corporation has never declared a dividend despite the fact that there was an adequate surplus, particularly in the years in issue, 460 from which to make dividend distributions. There is no evidence to indicate that this suplus had been earmarked for any specific business purpose. We view the historical pattern of no dividend distributions, notwithstanding the availability of an adequate surplus, as being at least suspect in a case such as this involving a closely held corporation. Oyster Shell Products Corporation v. C.I.R., 313 F. 2d 449*233 (C.A. 2, 1963), aff'g. a memorandum opinion of this Court It is well established that the disbursement of corporate earnings to specific shareholders may constitute a dividend to such shareholders notwithstanding the fact that the formalities of a dividend declaration are not observed; that the distribution is not in proportion to the stockholdings; or, that some of the shareholders do not even participate in the distribution. Roy J. Kinnear, 36 B.T.A. 153 (1937), and Lincoln National Bank v. Burnet, 63 F. 2d 131 (C.A.D.C. 1933), affirming 23 B.T.A. 1304 (1931). Based upon the facts before us we conclude that petitioner withdrew the funds from the corporation for her personal use and without a specific intent to repay the corporation. These facts indicate a dividend distribution and not a loan. Chism's Estate v. Commissioner, 322 F. 2d 956 (C.A. 9, 1963), affirming a memorandum opinion of this Court, and Elliot Roschuni, 29 T.C. 1193 (1958), affirmed per curiam 271 F. 2d 267 (C.A. 5, 1959), certiorari*234 denied 362 U.S. 988 (1960). There is no evidence that any date for repayment was set or of any agreed plan for repayment. Petitioner did not make any repayment on the alleged indebtedness except as occasioned in August 1966 when petitioner transferred $16,949.69 to the corporation. This transfer was originally treated, for accounting purposes, as a loan to the corporation, and only after an internal revenue agent had raised the dividend issue was the amount treated as a repayment to offset a portion of the loans receivable from petitioner. We view such a repayment as being made under circumstances which minimize its persuasiveness as evidence of an intent to repay. George R. Tollefsen, 52 T.C. 671, 680 (1969), aff'd. 431 F. 2d 511 (C.A. 2, 1971) certiorari denied 401 U.S. 908 (1971). Despite the fact that petitioner had the financial ability to repay the sums withdrawn, no repayments were made (except as indicated above), and no demand for repayment was made by the corporation. It should also be noted that the decision to demand repayment or enforce collection and the decision to actually repay rested in the same person, *235 petitioner. Elizabeth Lewis Saigh, 36 T.C. 395, 420 (1961). Petitioner's major argument is that she testified that she intended to repay the money to the corporation. Not only does the other evidence of record negate any such intent, but also petitioner's own testimony shows that she had no specific intent to repay the withdrawals in her lifetime. In testifying that she did not intend to permanently keep the money and therefore wanted to give notes to the corporation for the withdrawals she stated: * * * when I borrowed the money I told them I wanted to make things right and I wanted to sign a note, and so if anything should happen to me then I knew that I was obligated to the corporation. Considering the evidence as a whole we conclude that petitioner had no intent to repay the withdrawals. Under these circumstances the withdrawals were distributions to a stockholder which were not loans. Accordingly we hold that the withdrawals made by petitioner from the corporation were dividends and not bona fide loans. Decision will be entered for respondent.