Carl G. Braun and Virginia M. Braun v. Commissioner.
Braun v. Commissioner
Docket Nos. 1634-70, 5234-70.
United States Tax Court
T.C. Memo 1971-144; 1971 Tax Ct. Memo LEXIS 191; 30 T.C.M. (CCH) 624; T.C.M. (RIA) 71144; June 16, 1971, Filed F. X. McCormick, 28 Prince St., Elizabeth, N. J., for the petitioners. Thomas S. Carles, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in petitioners' income taxes as follows: Taxable year ended
Deficiency
December 31, 1964
$ 9,091.49
December 31, 1965
17,621.53
December 31, 1966
21,011.95
December 31, 1967
10,732.22
The sole issue for determination is whether net cash withdrawals by petitioner Carl G. Braun from a corporation in each of the years in issue constituted bona fide loans or taxable dividends under sections 301 and 316. [1]
*192 Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife during the years in issue, were legal residents of New Jersey at the time the petitions herein were filed. They filed joint income tax returns for the taxable years 1964, 1965, 1966, and 1967 with the district director of internal revenue, Newark, New Jersey. Petitioner Virginia M. Braun is a party to this proceeding only because she joined in such returns. All references herein to petitioner shall be deemed to mean Carl G. Braun. During the years involved herein, petitioner was the president and chief executive officer of Branson Corp. (hereinafter sometimes referred to as "the corporation"). Branson Corp. was incorporated in 1948 as the Carl G. Braun Corporation; the corporation's initial financing was obtained from A. J. Wittenberg, the father of petitioner Virginia M. Braun and the fatherin-law of petitioner Carl G. Braun. During the years in issue, the stock of the corporation was held as follows: Preferred
Common
(a) Carl G. Braun
150 shares
(b) L. Kirby, Jr.
50 shares [2]
(c) A. J. Wittenberg
10 shares
150 shares
*193 During the same period, petitioner was the only shareholder actively engaged in the affairs of the corporation, he was the only salaried shareholder, and he and his wife constituted a majority of the board of directors. Petitioner had a regular practice of withdrawing money from the corporation in varying amounts. Petitioner would have the corporation's accountant issue him a check for the amount desired. The amount was debited on the books of the corporation to an account designated "Due To and From Officers." During the taxable years in issue, petitioner's salary from the corporation was: Taxable year
Amount
1964
$50,000
1965
50,000
1966
70,000
1967
60,000 625 In each of the years involved herein, petitioner withdrew amounts in excess of his salary as follows: Net amount of peti-
Year
tioner's withdrawals
1964
$20,083.89
1965
39,531.87
1966
41,585.60
1967
24,499.10
No independent cash repayments of the amounts withdrawn were made by the petitioner. Instead, credit entries were made to the account, representing his salary and certain unreimbursed out-of-pocket expenses incurred by petitioner on behalf of the corporation. *194 None of the other shareholders of the corporation was ever consulted about these withdrawals by the petitioner nor was any action taken by the board of directors or shareholders of the corporation with respect thereto. During the taxable years involved, no notes, security, collateral, or other similar indicia of indebtedness were created to evidence these alleged loan transactions, no payments of interest were provided for or made, no plan for repayment was in effect, and the corporation made no attempt to collect from petitioner any of the amounts withdrawn. Petitioner's only source of income from which he could repay the amounts withdrawn was the salary he received as an executive officer of the corporation. On May 9, 1968, petitioners filed a protest against respondent's determination that the excess withdrawals during 1964 and 1965 were dividend distributions. Subsequently, petitioner executed a note evidencing his indebtedness to the corporation and agreed to pay interest to the corporation at a rate of 5 percent per annum. In October 1970, the petitioner and his present wife, Diane E. Braun, executed a mortgage on certain individually owned realty in favor of the corporation. *195 The principal of the mortgage was not required to be paid until ten years later, to wit, September 30, 1980. The mortgage was never recorded. During May 1969, a resolution was adopted by the board of directors of the corporation wherein a method of repayment by the petitioner was formulated. The effect of the aforesaid resolution was that petitioner would receive a year-end bonus, consisting of the first $8,000 of before-tax profits of the corporation plus 10 percent of the remaining after-tax corporate profits, and that such bonus would be used to repay the excess withdrawals plus interest. During 1969 and 1970, the aggregate amount of the purported loan to petitioner, as evidenced by the excess withdrawals in prior years, was reduced. As of December 31, 1970, the amount of the unrepaid withdrawals was $94,878.36. The withdrawals by petitioner over and above the amount of his salary during the years in issue were not used for the purposes of the corporation. The corporation's earned surplus as indicated on its income tax returns was as follows: Taxable year ended
Amount
September 30, 1964
$138,064.25
September 30, 1965
130,202.25
September 30, 1966
238,678.34
September 30, 1967
289,256.29
*196 No dividends were ever declared or paid as such by the corporation with respect to either its preferred or common stock. The question before us is one of fact, namely, whether the excess withdrawals by petitioner constituted bona fide loans or distributions of earnings and profits in the nature of dividends. This in turn depends upon whether repayment was contemplated by the parties at the time the withdrawals were made. E.g., George R. Tollefsen, 52 T.C. 671, 678 (1969), affd., 431 F. 2d 511 (C.A. 2, 1970). The burden of proof is on the taxpayer. Rule 32, Tax Court Rules of Practice. On the basis of all the evidence, we conclude that the petitioners have failed to carry that burden. During the years in issue, petitioner was the only stockholder actively engaged in the business of the corporation; he owned approximately 43 percent of the outstanding common stock of the corporation and another 43 percent was owned by his father-in-law, who did not participate in the corporate affairs; petitioner and his wife controlled the board of directors; no notes or security were given to evidence the purported indebtedness of petitioner for the excess withdrawals *197 for purposes unrelated to the affairs of the corporation; no interest was paid or payable; no time was set for repayment; no realistic means of repayment existed; no dividends were declared or paid as such on the common or preferred stock. Against these objective facts, the assertion that the parties intended repayment or even petitioner's self-serving claim that he had 626 such intention simply cannot pass muster. William C. Baird, 25 T.C. 387 (1955). Nor can petitioners' position derive any sustenance from the subsequent provisions for repayment. Clearly, such arrangements were made after the fact and in addition were undertaken only after petitioners were made aware of respondent's claim that the excess withdrawals constituted distributions in the nature of dividends. Under such circumstances, they constitute far too thin a gruel to justify a decision in petitioners' favor. Atlanta Biltmore Hotel Corp. v. Commissioner, 349 F. 2d 677, 680 (C.A. 5, 1965), affirming on this issue a Memorandum Opinion of this Court; George R. Tollefsen, supra, 52 T.C. 671, at 680. We find that the excess withdrawals by petitioner from the corporation *198 during the years in issue were distributions in the nature of dividends and not loans. Consequently, we sustain respondent's determination. Decisions will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩
2. These shares were redeemed by the corporation during 1967 and apparently held as treasury stock thereafter.↩